IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, *et al.* | ) ) | CIVIL ACTION NO. 1:11-cv-03281-RDB |
| Plaintiffs, | ) | |
| v. | ) ) | |
| EMPIRE GLASS, PAINT & MIRROR, INC. d/b/a Empire Glass and Mirror | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT BY DEFAULT UNDER FEDERAL RULE OF CIVIL PROCEDURE 55(b) AGAINST DEFENDANT

Plaintiffs, International Painters and Allied Trades Industry Pension Fund ("Fund" or "Pension Fund") and Gary J. Meyers ("Meyers"), a fiduciary on behalf of the Fund, Political Action Together Fund ("PAT Fund") and the Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI" and together with the Pension Fund, Meyers and the PAT Fund, "Plaintiffs")[1], by their legal counsel, file this Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment against Defendant, Empire Glass, Paint & Mirror, Inc. d/b/a Empire Glass and Mirror ("Company" or "Defendant") for unpaid contributions, liquidated damages, interest and attorneys' fees and costs incurred by the Funds pursuant to the collective bargaining agreement between Defendant and the union under 29 U.S.C. § 185(a) and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1145, 1132(g)(2)(A) – (D).

## BACKGROUND

Defendant is a party to a collective bargaining agreement ("Labor Contract") with the

---

[1] The Pension Fund and Myers are the authorized collection agents for the Pension Plan, the Annuity Plan, the Finishing Trades Institute f/k/a International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund ("FTI"), the PAT Fund and LMCI.

International Union of Painters and Allied Trades District Council 711 ("Union"). Exhibit 1, Montemore Affidavit, ¶ 7; Exhibit 2, District Council 711 Labor Contract. The Labor Contract provides for the payment of contributions to the Pension Fund for time worked by or paid to employees of Defendant who perform work covered by the terms and conditions of the Labor Contract. Exhibit 1, ¶ 8; Exhibit 2, pp. 13-16. Failure to make these contributions, or to submit either incorrect or late remittance reports, results in a delinquency to the Pension Fund. Exhibit 1, ¶ 8. The obligation to pay contributions and other damages is ongoing under the Labor Contract and trust documents.

Defendant failed to make timely payment of fringe benefit contributions, interest and liquidated damages in violation of the Labor Contract and on November 16, 2011, the Plaintiffs filed a Complaint against Defendant seeking $33,224.85. Complaint, Docket Entry 1, ¶ 25 and Exhibit 4. The Complaint and Summons were served upon Defendants on December 1, 2011. Executed Summons, Docket Entry 4. Defendant did not defend or otherwise move within twenty-one (21) days as required by Rule 12(a) of Federal Rules of Civil Procedure. As of the filing of this Motion for Default, Defendant has failed to remit amounts totaling $33,391.56 plus litigation costs and fees. Exhibit 1, ¶ 9. The Plaintiffs have filed a Request for Entry of Default pursuant to Fed. R. Civ. P. 55(a) and Plaintiffs now submit this Motion for Judgment by Default.

## **ARGUMENT**

## I.    **JUDGMENT MAY BE ENTERED BY DEFAULT**

Under Federal Rule of Civil Procedure 55(a), the clerk of the court must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Following the clerk's entry of default, a court may enter default judgment pursuant to Rule 55(b). Fed. R. Civ. P. 55(b). "The determination of whether default judgment is appropriate is

committed to the discretion of the trial court." Int'l Painters & Allied Trades Indus. Pension

Fund v. Auxier Drywall, LLC, 531 F.Supp. 2d 56, 57 (D.D.C. 2008) (citing Jackson v. Beech,

636 F.2d 831, 836 (D.C. Cir. 1980)).

Where there is a complete "absence of any request to set aside the default or suggestion

by the defendant that it has a meritorious defense, it is clear that the standard for default

judgment has been satisfied." Id. (internal quotation marks omitted).

In light of Defendant's default and Defendant's continuing failure to appear or otherwise

defend this action, Plaintiffs are entitled to judgment by default against Defendant without a

hearing as the damages are set forth in the Complaint. Fed. R. Civ. P. 55(b); Draisner v. Liss

Realty, 94 U.S. App. D.C. 53, 211 F.2d 808, 809 (D.C. Cir. 1954); United States v. DeFrantz,

708 F.2d 310, 312 (7th Cir. 1983). Where a defendant, such as here, fails to respond to the

Complaint, all factual allegations in the Complaint are deemed admitted. Int'l Painters & Allied

Trades Indus. Pension Fund v. R.W. Armine Drywall Co., Inc., 239 F. Supp. 2d 26, 30 (D.D.C.

2002); Thomson v. Wooster, 114 U.S. 104, 113 (1885); Breaking the Chain Foundation, Inc. v.

Capitol Ed. Support, Inc., 589 F. Supp. 2d 25, 29 (D.C. Cir. 2008); Comdyne I, Inc. v. Corbin,

908 F.2d 1142, 1149 (3d Cir. 1990); Ryan v. Homecomings Financial Network, 253 F.3d 778,

780 (4th Cir. 2001); Au Bon Pain Corporation v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981);

Chedasama v. Mazda Motor Corp., 123 F.3d 1353, 1370 n. 41 (11th Cir. 1987); Nishimatsu

Const. Co., Ltd. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). This includes

general, was well as specific, factual allegations relevant to a cause of action. See e.g. Danning v.

Lavine, 572 F.2d 1386, 1389 (9th Cir. 1978) (allegations of insolvency plead in general terms are

sufficient to support a finding of fraudulent conveyance or voidable preference). The moving

party is entitled to all reasonable inferences from the evidence it offers, Au Bon Pain, 653 F.2d at

65. As observed in Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987), evidence of the

liability of the defendant is a non-issue in a default as "[s]uch liability is well-pled in the complaint, and is therefore established by the entry of default . . . ." See Auxier Drywall, LLC, 531 F. Supp. 2d at 59 (noting that default in and of itself establishes liability). "Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." R.W. Armine Drywall Co., Inc., 239 F. Supp. 2d at 30) (citing Adins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001).

A default also admits that damages were proximately caused by the defendant's illegal conduct. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1992). In determining damages beyond a simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) allows a court to hold an evidentiary hearing or rely on detailed affidavits or documentary evidence. Flynn v. Mastro Masonry Contractors, 237 F. Supp. 2d 66, 69 (D.D.C. 2002) ("In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment") (citing United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979)).

## II. ERISA ALLOWS OR REQUIRES A JUDGMENT AGAINST DEFENDANT FOR UNPAID CONTRIBUTIONS, INTEREST, STATUTORY LIQUIDATED DAMAGES, AND ATTORNEYS' FEES AND COSTS

### A. Section 515 of the Employee Retirement Income Security Act, 29 U.S.C. § 1145, Provides a Statutory Mechanism to Enforce Contribution Obligations in a Collective Bargaining Agreement

The Defendant is party to a collective bargaining agreement ("Labor Contract") with the International Union of Painters and Allied Trades District Council 711. Exhibit 1, ¶ 7; Exhibit 2. Under the Labor Contract, the Defendant is required to submit remittance reports and pay contributions to Plaintiffs for time worked by or paid to covered employees. Exhibit 1, ¶ 8; Exhibit 2, pp. 13-16. The Labor Contract sets forth a monthly contribution rate per employee

and requires payment of the contributions.  Exhibit 1, ¶ 8; Exhibit  2, pp. 13-16 and Schedule A.

Section  515  of  the  Employee  Retirement  Income  Security  Act,  29  U.S.C.  §  1145 provides:

> Every Employer who is obligated to make contributions to a
> multiemployer plan... under the terms of a collectively bargained
> agreement shall...make such contributions in accordance
> with...such agreement.

Section 515 of ERISA was enacted to impose "...a federal statutory duty to contribute on

employers that are already obligated to make contributions to multiemployer plans."  126 Cong.

Rec. 23039 (Rep. Thompson).

Multiemployer plans must and do rely on the written terms of collective bargaining

agreements submitted to them.  Flynn v. Dick, 481 F.3d 824 (D.C. Cir. 2007) (citing Benson v.

Browers Moving and Storage, Inc., 907 F.2d 310, 314 (2d Cir. 1990)).  As explained and upheld

in Walsh v. Schlecht, 429 U.S. 401, 410 (1977), a multiemployer plan redistributes the actuarial

cost of benefits in the form of equal unit labor costs in a contribution obligation measured by

work performed by all contributing employers in the industry, without regard to the actual cost or

provision of benefits to the employees of any single employer or employee.

ERISA Section 515 was specifically designed to codify and "...endorse judicial decisions

such as Lewis v. Benedict Coal Corp," 126 Cong. Rec. 23,039 (Rep. Thompson), with respect to

collection of contributions; see also Bituminous Coal Operators' Ass'n, Inc. v. Connors

867 F.2d 625, (D.C. Cir. 1989); Bugher v. Feightner, 722 F.2d 1356, 1360 n.3 (7th Cir.

1983) (noting "that the floor managers of [ERISA Section 515] both stated that they

endorsed cases such as Lewis v. Benedict Coal Corp, 126 Cong.Rec. H7899 (daily ed. Aug.

26, 1980) (remarks of Rep. Thompson), 126 Cong.Rec. S11673 (daily ed. Aug. 26, 1980)

(remarks of Sen. Williams).  Section 515 and its historical background in case law treat

multiemployer plans as a type of "holder-in-due course" with the right to enforce the terms

of a collective bargaining agreement as written without extraneous defenses. Dick, 481 F.3d

at 829.

In Lewis v. Benedict Coal Corp., 361 U.S. 459, 467, 468, 469 (1960), the Court

explained:

> In a two-party contract situation, when a promisor's duty to perform is absolute, the promisee's breaches will not excuse performance of that duty; the promisor has an independent claim against the promisee in damages.... However, a third-party beneficiary has made no promises and therefore has breached no duty to the promisor.   When it is said that 'it may be just' to make the third party subject to the counterclaim, what must be meant is that a court should infer an intention of the promisor and promisee that the third party's rights be so limited.

> This may be a desirable rule of construction to apply to a third-party beneficiary contract where the promisor's interest in or connection with the third party, in contrast with the promisee's, begins with the promise and ends with its performance.

> * * *

> This collective bargaining agreement [with a promise of contributions to a multiemployer plan], however, is not a typical third-party beneficiary contract.  The promisor's interest in the third party here toes far beyond the mere performance of its promise to that third party, i.e., beyond the payment of [fringe benefit contributions].  It is a commonplace of modern industrial relations for employers to provide security for employees and their families to enable them to meet problems arising from unemployment, illness, old age or death.  While employers in many other industries assume this burden directly, this welfare fund was jointly created by the coal industry and the union for that purpose.  Not only has Benedict entered into a longterm relationship with the union in this regard, but in compliance with §302(c)(5)(B) it has assumed equal responsibility with the union for the management of the fund.

> ...unlike the usual third-party beneficiary contract, this is an industry-wide agreement involving many promisors.  If Benedict and other coal operators having damage claims against the union for its breaches may curtail royalty payments, the burden will fall

in the first instance upon the employees and their families across the country. Ultimately this might result in pressures upon the other coal operators to increase their [fringe benefit] payments to maintain the planned schedule of benefits. The application of the suggested rule of construction to this contract would require us to assume that the other coal operators who are parties to the agreement were willing to risk the threat of diminution of the fund in order to protect those of their number who might have become involved in local labor difficulties.

These stringent rules recognize that the failure of the Defendant to comply with its contractual and statutory obligations results in a substantial adverse impact on the Defendant's employees. When an employer fails to remit its contributions, the Plaintiffs lose the income that they could have earned by investing these contributions. Plaintiffs incur additional administrative expenses as a result of an employer's failure to pay its contributions. These losses and added expenses for collection impair Plaintiffs' ability to continue to provide benefits not only to Defendant's employees, but also to employees of other companies in the Fund that have complied with their contractual obligations. Congress has evidenced an intent to minimize such losses. See Hollan v. Freeman United Coal Mining Co., 574 F. Supp. 2d 116, 126 (D.D.C. 2008).

Central Pennsylvania Teamsters Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1103 (3d Cir. 1996), reaffirmed the policies of Lewis v. Benedict Coal Corp under 29 U.S.C. §1145 and noted that benefit plans must be able to rely on written contribution promises of employers "because plans must pay out to beneficiaries whether or not employers live up to their obligations." See also Flynn v. R.C. Tile, 353 F.3d 953 (D.C. Cir. 2004). As the court in Wyle v. Pacific Maritime Association (In Re: Pacific Far East Lines, Inc.), 713 F.2d 476, 477 (9th Cir. 1983), explained, "[if] one of the employer members of [the plan] fails to contribute its share, the balance required to fund the benefits must ultimately be made up by the other employers."

Bakery and Confectionery Union and Industry International Pension Fund v. Ralph's

Grocery Company, 118 F.3d 1018, 1021 (4th Cir. 1997), summarizes both the history and policy

of Section 515:

> In a collection action based on section 515, a multiemployer plan
> can enforce, as written, the contribution requirements found in the
> controlling documents. Central Pennsylvania Teamsters Pension
> Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1103 (3d Cir.
> 1996). In this respect, section 515 puts multiemployer plans in a
> stronger position than they otherwise occupy under common law
> contract principles. See, e.g., Central States, Southeast and
> Southwest Areas Pension Fund v. Independent Fruit and Produce
> Co., 919 F.2d 1343, 1348 (8th Cir. 1990); Connors, 867 F.2d at
> 633-34.
>
> Because an employer's obligation to a multiemployer plan usually
> arises through a collective bargaining agreement negotiated and
> agreed to by the employer and union, the multiemployer plan is,
> under common law contract principles, a third party beneficiary of
> the collective bargaining agreement. See Sinai Hospital of
> Baltimore, Inc. v. National Benefit Fund for Hospital & Health
> Care Employees, 697 F.2d 562, 568 (4th Cir. 1982). Although a
> third party beneficiary can enforce the terms of a contract that
> inure to its benefit, it is subject to defenses that the promisor could
> assert against the original party to the contract. Connors, 867 F.2d
> at 632. This often meant a multiemployer plan would be subject to
> defenses the employer could assert against the local union.
> Independent Fruit and Produce, 919 F.2d at 1348; but see Lewis v.
> Benedict Coal Corp., 361 U.S. 459 (1960) (recognizing, before the
> enactment of section 515, an exception to the common law third
> party beneficiary rule in the context of multiemployer Plaintiffs).
>
> Before section 515 was enacted, collection actions by
> multiemployer plans often were complicated by issues that had
> arisen between the employer and the local union but were
> unrelated to the employer's obligation to the plan. Central States,
> Southeast and Southwest Areas Pension Fund v. Gerber Truck
> Service, Inc., 870 F.2d 1148, 1152-53 (7th Cir. 1989); Independent
> Fruit and Produce, 919 F.2d at 1348. Injecting these tangential
> issues into collection actions consumed plan resources by
> increasing the cost and delay involved in litigation. See, e.g.,
> Independent Fruit and Produce, 919 F.2d at 1348. And, in cases in
> which the employer's defense was successful, the plan was left
> without contributions it had been promised and had expected. See,
> e.g., Id. Ultimately, these losses were shouldered by employee
> beneficiaries through reduced benefits and other employers
> through increased contributions. Id.; Gerber Truck Service, 870

F.2d 1151; Benson v. Brower's Moving & Storage, Inc., 907 F.2d
310, 314 (2d Cir. 1990). Because multiemployer plans typically
involve many employers and unions across the nation, in most
cases it would be difficult and costly for such plans to monitor the
problems or understandings that arise between the individual
unions and employers. McCormick Dray Line, 85 F.3d at 1103;
Gerber Truck Service, 870 F.2d at 1151.

Section 515 strengthens the position of multiemployer plans by
holding employers and unions to the literal terms of their written
commitments. Because an employer's obligation to a
multiemployer fund is determined by the plain meaning of the
language used in the collective bargaining agreement, the actual
intent of the contracting parties (i.e., the employer and the local
union) is immaterial when the meaning of that language is clear.
Independent Fruit and Produce, 919 F.2d at 1349, 1352-53; see
also Connors, 867 F.2d at 635-36. Consequently, an employer is
not permitted to raise defenses that attempt to show that the union
and the employer agreed to terms different from those set forth in
the agreement. See, e.g., Gerber Truck Service, 870 F.2d 1148
(refusing to enforce an oral agreement between employer and
union). Nor is an employer permitted to raise defenses that relate
to claims the employer may have against the union. See, e.g.,
Agathos v. Starlite Motel, 977 F.2d 1500, 1505 (3d Cir. 1992)
(fraud in the inducement); Connors, 867 F.2d at 632-36 (mistake of
fact). By allowing multiemployer Plaintiffs to enforce the literal
terms of an employer's commitment, section 515 increases the
reliability of their income streams, reduces the cost and delay
associated with collection actions, and reduces or eliminates the
cost of monitoring the formation of collective bargaining
agreements.

There are only three valid defenses to an action by a multiemployer plan under 29 U.S.C.

§ 1145: the contribution provision itself is illegal; the collective bargaining agreement is *void ab*

*initio* because of fraud in the execution; or the collective bargaining agreement was prospectively

voided because the employees represented by the Union had voted to decertify. Flynn v.

Thibodeaux Masonry, Inc., 311 F. Supp. 2d 30, 43-44 (D.D.C. 2005) (citing Congressional intent

"to minimize contribution losses" such that courts have recognized only "three possible defenses

an employer may raise to delinquent-contribution suits"); Holland v. Freeman United Coal

Mining, Co., 574 F.Supp.2d 116 (D.D.C. 2008). There is no hint of any such issues in this case.

**B.     ERISA Section 515 Provides for Recovery of Interest, Liquidated Damages and Attorney Fees and Costs in Addition to the Delinquent Contributions**

If an employer fails to make the contributions as required by the collective bargaining agreement and Section 515, the employer is subject to the provisions of Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539, 547 (1988), recognizes that ERISA Sections 515 and 502(g)(2) give a benefit fund a right to an award of delinquent contributions, and mandatory liquidated damages, interest and attorneys' fees and costs.

Section 502(g)(2) specifically provides for the mandatory award of the following items if a judgment under ERISA Section 515 is entered in favor of a benefit fund:

(A)     the unpaid contributions,

(B)     interest on the unpaid contributions,

(C)     an amount equal to the greater of:

(i)      interest on the unpaid contributions; or

(ii)     liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under Subparagraph (a),

(D)     reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E)     such other legal or equitable relief as the court deems appropriate.

See Teamsters Local 639- Employers Health Trust v. Boiler and Furnace Cleaners, Inc., 571 F. Supp. 2d 101, 107 (D.D.C. 2008); United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc., 787 F.2d 128, 134-135 (3d Cir. 1986).[2]

---

[2] Yahn & McDonnell and other appellate cases often deal with the collection of withdrawal liability due to a multiemployer pension plan. The precedent is directly applicable as 29 U.S.C. § 1451(b), treats such claims as a delinquent contribution and makes ERISA Section 515, 29 U.S.C. § 1145, and thus ERISA Section 502(g), 29 U.S.C. § 1132(g), applicable to them.

1.   <u>Interest</u>

Interest is a mandatory award under ERISA and is calculated in accordance with 26

U.S.C. § 6621 from the date the contributions became due.  29 U.S.C. 1132(g)(2)(B); <u>Int'l.</u>

<u>Painters and Allied Trades Ind. Pension Fund v. R.W. Amrine Drywall Co., Inc.</u>, 239 F. Supp. 2d

26, 31 (D.D.C. 2002); <u>Trustees of the Colo. Statewide Ironworkers (Erector) Joint</u>

<u>Apprenticeship & Training Trust Fund v. A & P Steel, Inc.</u>, 824 F.2d 817, 818 (10th Cir. 1987).

"This prejudgment interest rate applies to those contributions which remain unpaid, as well as

those previously unpaid contributions which have been paid subsequent to the commencement of

this action." <u>Scott v. Absolute Insulation, Inc.</u>, -- F.Supp.2d --, 2007 WL 2728551 *2 (W.D. Pa.

2007), <u>citing</u> <u>United Auto Workers Local 259 Social Sec. Dep't v. Metro Auto Ctr.</u>, 501 F. 3d

283, 289 (3d Cir. 2007).  Indeed, <u>Bennett v. Machined Metals Co.</u>, 591 F. Supp. 600, 604 (E.D.

Pa.1984), concluded that interest under Section 515 runs up to actual payment date, even if

payment was made before the complaint was filed for "[t]o hold an employer completely free

from liability because payment was forwarded in advance of litigation would frustrate Congress'

remedial purpose."

The court should also allow post-judgment interest in accordance with 28 U.S.C. §1961.

<u>See</u> <u>I.A.M. National Pension Fund, Plan A, A Benefits v. Slyman Industries, Inc.</u>, 704 F. Supp.

301, 303 (D.D.C. 1989), <u>aff'd</u> , 901 F.2d 127, 130 (D.C. Cir. 1990).  This interest rate equals the

weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors

of the Federal Reserve System, for the calendar week preceding the date of the judgment.  The

current rate is published at http://www.federalreserve.gov/releases/H15/Current/.

2.   <u>Liquidated Damages</u>

"An award of additional interest or liquidated damages is mandatory when a fiduciary

prevails on a claim for unpaid contributions under ERISA."  <u>Finkel v. INS Elec. Services Inc.</u>,

2008 WL 941482 *6 (E.D. N.Y.), citing Nat'l Pension Plan of the UNITE HERE Workers Pension Fund v. Swan, -- F.Supp.2d --, 2006 WL 1292780 *4 (S.D.N.Y. 2006) and Idaho Plumbers & Pipefitters v. United Mechanical, 875 F.2d 212, 215 (9th Cir.1989); see also Teamsters Pension Trust Fund of Philadelphia and Vicinity v. John Tinney Delivery Service, Inc., 732 F.2d 319, 323 (3d Cir. 1984) (ERISA provides that a "court 'shall award' prejudgment interest and some form of liquidated damages upon finding an employer in violation of its obligation to make contributions").  As Finkel observes, the amount is set by "Section 502(g)(2)(C) of ERISA [which] provides for additional interest or liquidated damages on unpaid contributions in 'an amount equal to the greater of (i) interest on the unpaid contributions; or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph [29 U.S.C. § 1132(g)(2)] (A)'." 2008 WL 941482 *6.

ERISA's liquidated damages apply to any contributions which are unpaid at the date of the lawsuit, even if they are paid before a judgment.  ITPE-MEBA/NMU Funds v. United Intern. Investigative Services, 1991 WL 90907 (D.D.C. 1991); Scott v. Absolute Insulation, Inc., 2007 WL 2728551, at *3, citing Carpenters Health and Welfare Fund of Philadelphia and Vicinity v. Building Tech, Inc., 747 F. Supp. 288, 297-298 (E.D. Pa.1990).  Trustees of the Glaziers Local 963 Pension, Welfare and Apprentice Plaintiffs v. Walker and Laberge Co. Inc., 619 F. Supp. 1402, 1405 (D. Md. 1985), explained the reason for a liquidated damages rule.

> Regular and prompt payment of amounts due by individual
> Employers to [an employee benefit plan] is essential for the
> maintenance of the [plan], and it would be extremely difficult, if
> not impracticable, to fix the actual expense and damage to the
> [plan] and to the program provided by the [plan] which will result
> from the failure of an individual Employer to make such monthly
> payments in full within the time period.

See also Flynn v. Mastro Masonry Contractors, 237 F. Supp. 2d 66, 69-70 (D.D.C. 2002) (liquidated damages help plan recover costs incurred in delinquencies).  The liquidated damages thus help compensate a fund for the expenses of staff time and expenses in tracking a delinquency and supporting collection litigation.

3.      Attorney Fees and Costs

"... ERISA mandates an award of reasonable attorneys' fees when, as here, a fund prevails in an action for unpaid contributions pursuant to 29 U.S.C. § 1145." United Automobile Workers Local 259, 501 F.3d at 285, citing 29 U.S.C. § 1132(g)(2)(D); see also Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 509 (3d Cir. 1992); Penn Elastic Co. v. United Retail & Wholesale Employees Union, 792 F.2d 45, 47-48 (3d Cir. 1986); United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc., 787 F.2d at 134-135.  As noted in O'Farrell v. Twin Brothers Meats, Inc., 889 F. Supp. 189, 192 (E.D. Pa. 1995), citing Cerva v. E.B.R. Enterprises, Inc., 740 F.Supp. 1099, 1102-1103 (E.D. Pa. 1990), the award includes the cost of preparing the application for fees.  The award may compensate paralegal work, as well as direct attorney time.  O'Farrell, 889 F. Supp. at 192 (allowing such costs); Finkel, 2008 WL 941482, at *11 (same) and cases cited.

The Third Circuit explained the calculation of allowable fees in United Automobile Workers Local 259, 501 F.3d at 290-291.

> ERISA allows a prevailing plan to recover "reasonable attorney's fees." 29 U.S.C. § 1132(g)(2)(D). "The most useful starting point for determining the amount of a reasonable fee" is the lodestar calculation. Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Under this well-settled approach, a court determines the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate. The product is a presumptively reasonable fee, but it may still require subsequent adjustment. Id. at 434, 103 S.Ct. 1933; Pennsylvania v. Del.

> Valley Citizens' Council for Clean Air, 478 U.S. 546, 565, 106
> S.Ct. 3088, 92 L.Ed.2d 439 (1986). …
>
> In requesting, challenging, and granting attorneys' fees, specificity
> is critical.  A request for fees must be accompanied by "fairly
> definite information as to hours devoted to various general
> activities, e.g., partial discovery, settlement negotiations, and the
> hours spent by various classes of attorneys." Evans v. Port Auth.,
> 273 F.3d 346, 361 (3d Cir. 2001).
>
> … the Fund's records describing the hours spent on various
> activities … allowed the District Court to determine whether the
> costs claimed were unreasonable for the work performed.  See
> Washington v. Phila. County Ct. Com. Pl., 89 F.3d 1031, 1037 (3d
> Cir. 1996) ("[S]pecificity should only be required to the extent
> necessary for the district court to determine if the hours claimed
> are unreasonable for the work performed.") (quotation marks and
> citation omitted).

See also O'Farrell, 889 F. Supp. at 192-193, citing Hensley, 461 U.S. at 433 (reviewing steps in

fee determination; lodestar is the market rate for similar work).  As allowed by Flying Tiger

Line, Inc. v. Central States, Southeast And Southwest Areas Pension Fund, 715 F. Supp. 1284,

1286 n. 3 (D. Del. 1989) citing Blum v. Witco Chemical Corp., 829 F.2d 367, 377 (3d Cir.

1987), counsel for Plaintiffs has supplied this information in affidavit form.

"…[Benefit fund T]rustees have a fiduciary obligation to collect the funds owed in

order to pay pensions and other related benefits due employees. … When the Trustees must

pay counsel fees to acquire the money owed them, there is a resulting diminution of funds

available to pay welfare and pension benefits to the Union members." Carpenters Health and

Welfare Fund of Philadelphia and Vicinity v. Ambrose, 727 F.2d 279 (3d Cir. 1983).  Thus,

there is no requirement that the attorneys' fees award must be proportional to the amount of the

underlying damages.  United Automobile Workers Local 259, 501 F.3d at 294-295; Operating

Eng'rs Pension Trusts v. B & E Backhoe, Inc., 911 F.2d 1347, 1355 (9th Cir. 1990) (refusing to

bar fee collection by an ERISA plaintiff where only a few hours of delinquent contributions

were due); see also King v. JCS Enters., Inc., 325 F. Supp. 2d 162, 168 (E.D.N.Y. 2004)

(attorneys fees not reduced by the fact that Plaintiffs collected only a quarter of what they

originally sought).  The Court in Building Serv. Local 47 Cleaning Contractors Pension Plan v.

Grandview Raceway, 46 F.3d 1392, 1401 & n.8 (6th Cir. 1995), even found that, "based on the

policy of the ERISA fee-shifting provision, the amount of the fee award may exceed the

amount of the money damages."

United Automobile Workers Local 259, 501 F.3d at 294-295, explained the reasons for

this approach:

> ERISA clearly assumes that [benefit plan] trustees will act to
> ensure that a plan receives all funds to which it is entitled." Cent.
> States, S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc., 472
> U.S. 559, 571, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985). When
> delinquencies are small, the cost of recovery may be
> disproportionate, and requiring proportionality would, in effect,
> discourage plans from taking their claims to federal courts.
> Moreover, § 1132(g)(2) was enacted to encourage employers to
> make timely contributions, assist plans in their recovery of
> delinquent contributions, and discourage excessive litigation by
> defendants.  See [Laborers Health and Welfare Trust Fund for
> Northern California v.] Advanced Lightweight Concrete, 484 U.S.
> [539] at 546, 108 S.Ct. 830; ... Funds are burdened by employers
> who needlessly extend or complicate litigation for small
> delinquencies just as they are burdened by employers who
> needlessly extend or complicate litigation for larger delinquencies.
> We do not read § 1132(g)(2) to limit the fee award of a plan
> suffering the former situation simply because the amount of
> underlying recovery is less.

The economic hardship to an employer from an award of fees is equally irrelevant at the

judgment stage, as the trustees have a fiduciary duty to collect that can only be evaluated in the

collection phase of litigation.  Ambrose, 727 F.2d at 286.

"Awardable costs include 'those reasonable out-of-pocket expenses incurred by attorneys

and ordinarily charged to their clients.'"  Finkel, 2008 WL 941482, at *11, citing LeBlanc-

Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (quoting United States Football League

v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989).  The reimbursement of fees and costs

includes both traditional items and newer items of legal costs, such as:

- computerized legal research, United Health Group Incorporated Shareholder Derivative Litigation, 2011 WL 222528, at *4 (8th Cir. 2011), citing In re: United Health Group Incorporated Shareholder Derivative Litigation, 631 F. Supp. 2d 1151, 1160 (D. Minn. 2009);  Houghton v. Sipco Company, Inc., 828 F. Supp. 631, 650-651 (S.D. Iowa 1993); O'Farrell, 889 F. Supp. at 192; Finkel,  2008 WL 941482, at *11, citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 98 (2d Cir. 2004) ("on-line research services ... may properly be included in a fee award");

- telephone charges, O'Farrell, 889 F. Supp. at 192; Finkel, 2008 WL 941482, at *11;

- photocopies,  O'Farrell, 889 F. Supp. at 192; Finkel, 2008 WL 941482, at *11; and

- postage, Finkel, 2008 WL 941482, at *11.

Plaintiffs seek relief in the form of reimbursement of their actual and reasonable costs which do

not exceed the comparable market rates for similar work.

The statute covers not only fees to the judgment date, but also any attorneys' fees and

costs expended in the subsequent collection and enforcement of the judgment. See Trucking

Employees of North Jersey Welfare Fund, Inc. v. Bellezza Co., 57 Fed. App'x. 972, 975-76 (3d

Cir. 2003); Free v. Briody, 793 F.2d 807, 808-09 (7th Cir. 1986) ("[T]he entry of judgment is not

the end of the litigation . . . It would make no more sense to deny attorney's fees for efforts to

collect a judgment than it would to deny them for efforts to defend a judgment on appeal");

Forys v. United Food and Commercial Workers International Union, 829 F.2d 603, 604-605 n.2

(7th Cir. 1987) (same); <u>Sheet Metal Workers Health and Welfare Trust Fund v. Big D Service</u>

<u>Co.</u>, 876 F.2d 852, 854 (10th Cir. 1989) (reversing the district court's denial of reasonable

attorneys fees incurred during post-judgment collection efforts).  This expands the normal

commercial remedy to allow the Fund to pursue actual collection beyond the mere entry of

judgment without infringing on the assets available for benefits to employees of employers who

meet their obligations.

**III.      THE FUND MAY ALSO ENFORCE THE LABOR CONTRACT UNDER 29 U.S.C. §185**

    29 U.S.C. §185(a) reads:

> Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting
> commerce as defined in this chapter, or between any such labor
> organizations, may be brought in any district court of the United
> States having jurisdiction of the parties, without respect to the
> amount in controversy or without regard to the citizenship of the
> parties.

This is the original source of benefit fund collection suits in federal court. <u>See</u> <u>Lewis v.Benedict</u>

<u>Coal</u>, 361 U.S. at 470; <u>Bugher v. Feightner</u>, 722 F.2d at 1358 (collecting pre-ERISA cases on 29

U.S.C. § 185(a) as the jurisdictional and substantive basis for suits to collect delinquent benefit

fund contributions).  It remains a valid basis for such suits and complements ERISA Section 515.

    A benefit trust fund has standing to sue under 29 U.S.C. § 185(a) "as a beneficiary of the

collective bargaining agreements authorizing it to collect contributions." <u>Chicago Plastering</u>

<u>Inst. Pen. Tr. v. W. A. Duguid</u>, 761 F.Supp.1345, 1347 n.2 (N.D. Ill. 1991).  As summarized in

<u>Hudson County Carpenters Local Union No. 6 v. V.S.R. Construction Corp.</u>, 127 F.Supp.2d 565,

568 (D.N.J. 2000):

> Section 301 of the Labor Management Relations Act ("LMRA"),
> 29 U.S.C. § 185. … provides federal district courts with
> jurisdiction to hear "[s]uits for violation of contracts between an
> employer and a labor organization representing employees in an

industry affecting commerce...." 29 U.S.C. § 185(a). ..., plaintiffs
and the ... defendants are parties to the [a collective bargaining
agreement] within the meaning of ERISA § 515 and LMRA § 301.
It is well-established that the failure to make contributions to a
union trust fund as required by a collective bargaining agreement
constitutes a violation of ERISA § 515 and a violation of LMRA §
301. Mass. State Carpenters Pension Fund v. Atlantic Diving Co.,
635 F.Supp. 9, 10-11 (D. Mass.1984); Composition Roofers Union
Local No. 30 Welfare Trust Fund v. Jackel Servs. Corp., 1998 WL
32608 (E.D. Pa. [1998]); Trustees of Nat'l Elevator Indus. Pension,
Health Benefit & Educ. Funds v. Nordic Indus., 1997 WL 83742
(E.D. Pa. [1997]).

See also Schneider v. Moving & Storage Co. v. Robbins, 466 U.S. 370-371 (1984) (recognizing

employee benefit fund trustees are third-party beneficiaries of a collective bargaining agreement,

although not a party to the collective bargaining agreement); Agathos, 977 F.2d at 1505 (same);

Wine v. SCH Elec., L.L.C., 2008 WL 4073853 *2-*3 (D. Ariz. 2008) (same).

29 U.S.C. §185 continues to provide a separate basis for relief to the Fund, as the

enforcement provisions of ERISA were "intended to supplement rather than supersede the rights

existing under 29 U.S.C. § 185," Bugher, 722 F.2d at 1359; see also Sheet Metal Workers Local

19 v. 2300 Group, Inc., 949 F.2d 1274, 1275 n.1 (3d Cir. 1991) ("district court had jurisdiction

under §§ 502 and 515 of ERISA, 29 U.S.C. §§ 1132, 1145, § 301 of the LMRA" of an action for

delinquent contributions); Connors v. Fawn Min. Corp., 30 F.3d 483, 489 n.6 (3d Cir. 1994)

(same); Sullivan, 504 F.3d at 667-668 (same); Ind. State Council of Roofers v. Adams Roofing,

753 F.2d 561, 563 (7th Cir.1985) (same); International Brotherhood of Electrical Workers Local

Union No. 380 Health & Welfare Trust Fund v. State Electric, 2006 WL 2228863, at *1 (E.D.Pa.

2006) (same). As explained in Sullivan, "[s]ince the breach of a contract between a union and an

employer is actionable under section 301 of the Taft-Hartley Act, 29 U.S.C. § 185(a), the trustees

were able to base their claim on this section as well as on ERISA. ... The remedies under the two

statutes differ somewhat. That is the usual incentive to claim under both." 504 F.3d at 667-668.

Thus, in addition to the remedies set forth in ERISA, the Plaintiffs are entitled to an award based upon the contractual remedies set forth in the collective bargaining agreement, Scott v. Absolute Insulation, Inc., -- F.Supp.2d --, 2007 WL 2728551 *3 (W.D. Pa. 2007); Alliance Electric, Inc. v. Local Union No. 98, International Brotherhood of Electrical Workers, CIV.A.91-6892, 1992 WL 358072, at *3 -*5 (E.D. Pa. 1992) (comprehensive review of interplay between ERISA and contract remedies; ERISA does not displace contract remedies); Southeastern Carpenters and Millwrights Health Trust v. M & M Construction, No. 2:04-CV-483-FWO, 2005 WL 1366485, at *3-*4 (M.D. Ala. 2005) (collecting cases allowing contract claims despite the absence of a Section 515 remedy). The contract claims may include payment for "audit [cost] damages pursuant to [a] collective bargaining agreements with [an employer, even though such costs are], not covered by [29 U.S.C.] §1132(g)." Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc., 933 F.2d 376, 390 (6th Cir.1991). As explained in Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp., 258 F.3d 645, 656 (7th Cir. 2001) (Posner, J.), "the harm to the fund is not affected by the happenstance of when suit is brought in relation to the payment of the delinquent contributions" and the parties thus may agree to additional or supplemental charges to prevent harm to the fund and its beneficiaries.

## A.     Contributions

The collective bargaining agreement in this case requires signatory employers to submit timely contributions on a monthly basis together with properly completed remittance reports. See Exhibit 1 ¶ 8, Exhibit 2, pp. 13-16. When these employers fail to submit contributions, the Plaintiffs may pursue claims for these amounts as a breach of contract.

## B.     Interest

The Labor Contract may set a rate of interest on a delinquency that is the same or different from the ERISA Section 515 rate. See Alliance Electric, 1992 WL 358072, at *9 (E.D.

Pa. 1992); <u>Central States, Southeast & Southwest Areas Pension Fund v. Hitchings Trucking, Inc.,</u> 492 F. Supp. 906, 909 (E.D. Mich. 1980).  In this case, the contract refers the issue to the Trustees of the Fund, who have adopted the ERISA rate as the rate for contract interest.  Exhibit 1, ¶ 9; Exhibit 2, pp. 13-16; Exhibit 4, §10.12(b).

### C.      Liquidated Damages

The Labor Contract also may include liquidated damages under traditional contract principles.  <u>See</u> <u>Alliance Electric,</u> 1992 WL 358072, at *9 (E.D. Pa. 1992).  The penumbra of ERISA Section 515 provides a form of "safe harbor" against an attack on the charge as an unenforceable "penalty" for charges at or below the liquidated damages calculation of ERISA Section 515, <u>John Tinney Delivery Service, Inc.,</u> 732 F.2d at 324 n.4.  In this case, the contract again refers the issue to the Trustees of the Pension Fund, who have adopted the "safe harbor" ERISA rate as the rate for contractual liquidated damages.  Exhibit 1, ¶ 9; Exhibit 2, pp. 13-16; Exhibit 4, §10.12(b).

### D.      Audit Costs

The Agreement and Declaration of Trust of the Pension Fund provides for payment of audit costs.  Exhibit 1, ¶ 9(d), Exhibit 3, Article 6, §6.

### E.      Attorney Fees and Costs

The International Painters and Allied Trades Industry Pension Plan provides for payment of attorney fees and costs.  Exhibit 3, §10.12.

## IV.      DAMAGES

Given the clear language of the contract and obligations mandated by ERISA, this Court should enter judgment in Plaintiffs' favor.  The Court should order the Defendant to pay contributions, liquidated damages, interest, audit costs and attorneys' fees and costs as dictated

by the collective bargaining agreement and ERISA.

The damages due are summarized in the following table and explained below.

| Fund | Contributions | Interest | Liquidated Damages | Audit Costs | Attorney Costs and Fees | TOTAL |
|---|---|---|---|---|---|---|
| Pension Plan | $10,072.00 | $1,277.09 | $2,014.40 | $886.32 | $4,185.79 | $18,435.60 |
| Annuity Plan | 13,696.99 | 1,732.92 | 2,739.40 | 454.97 | | 18,624.28 |
| LMCI | 125.90 | 15.94 | 25.18 | 5.47 | | 172.49 |
| FTI | 125.90 | 15.94 | 25.18 | 5.47 | | 172.49 |
| PAT | 125.90 | 15.94 | 25.18 | 5.47 | | 172.49 |
| TOTAL | $24,146.69 | $3,057.83 | $4,829.34 | $1,357.70 | $4,185.79 | $37,577.35 |

A.    Contributions

Defendant owed a total of $24,146.69 in unpaid contributions for work performed during the period June 29, 2007 through December 31, 2008. Exhibit 1, ¶ 9(a). These contributions are the basis for the supplemental ERISA remedies of pre-judgment interest and liquidated damages. There has been no payment on this debt since the Complaint was filed.

B.    Interest

Defendant failed to pay contributions on time. Plaintiffs thus are entitled to interest in accordance with ERISA of $3,057.83 through February 6, 2012. Exhibit 1, ¶ 9(b). The rate under the Labor Contract is the same in this case, as the contract refers the issue to the Trustees of the Fund. Exhibit 3, §10.12.

C.    Liquidated Damages

ERISA mandates that liquidated damages be awarded in an amount equal to the greater of interest or 20% of unpaid contributions, 29 U.S.C. § 1132(g)(2). The rate under the Labor Contract is the same in this case, as the contract refers the issue to the Trustees of the Fund, who have adopted the ERISA rule for contractual liquidated damages. Exhibit 1, ¶ 10(c), Exhibit 3, §10.12.

As indicated above, the total interest owed through February 6, 2012 is $3,057.83. Twenty percent (20%) of Defendant's unpaid or late paid contributions is $4,829.34. Twenty percent (20%) of Defendant's unpaid contributions is greater than the amount of interest. Therefore, Defendant owes liquidated damages in the amount of $4,829.34.

**D.    Audit Costs**

The determination of an employee's eligibility for benefits is made based upon information contained on the remittance report. An employer's liability to the Pension Fund is also based on information contained in the report. When a remittance report is not submitted or contains incorrect information, then a proper determination of eligibility and amounts due to the Pension Fund is impossible. In such a case, the only means of obtaining the necessary information is to review the employer's payroll records. Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 581 (1985).

Article VI, Section 6 of the Agreement and Declaration of Trust of the Pension Fund provides for recovery of audit costs in the event that an audit of a signatory employer's payroll books and related records reveals a delinquency to the Pension Fund. On or about October 2, 2009, the Pension Fund completed an audit of the Company's payroll books and related records covering the period June 29, 2007 through December 31, 2008. This audit revealed a consistent pattern of underpayments and non-payments of contributions to the Pension Fund. As a result, Company is responsible for the cost of the audit. The cost of the audit is $1,357.70. Exhibit 1, ¶ 9(d).

**E.    Attorney Fees and Costs**

The Fund has also incurred a total of $3,683.00 in attorneys' fees and $502.79 in costs on this matter through February 6, 2012. Affidavit of Dawn M. Costa, Exhibit 5. This total

includes billed attorneys' fees and costs through January 31, 2012, as well as unbilled attorneys' fees through February 6, 2012.  The hours, rates and comparable market rates supporting these charges are detailed with the necessary specificity in the affidavit of counsel filed with this motion.  Exhibit 5, Costa Affidavit; Exhibit 7, Altman Weil Survey; Exhibit 8, Ohio Bar Association Survey.  As noted above, the judgment should also allow any additional fees and expenses incurred in collection.

## CONCLUSION

Plaintiffs ask that the Court grant Plaintiffs the relief requested in proposed order submitted with this Motion for Default Judgment under ERISA and the collective bargaining agreement.

Respectfully submitted,

February 7, 2012
Date

/s/ Judith Sznyter
Judith Sznyter
Bar No. 29743
Jennings Sigmond, P.C.
The Penn Mutual Towers, 16th Floor
510 Walnut Street
Philadelphia, PA 19106
(215) 351-0664

Dawn M. Costa
Jennings Sigmond, P.C.
510 Walnut Street, 16th Floor
Philadelphia, Pennsylvania 19106

Attorneys for Plaintiffs